IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KENNETH M. KANSKY,              )
      Plaintiff              )
                    )
V.              )
                    )          CIVIL ACTION No: **05 10908 DPW**
COCA-COLA BOTTLING COMPANY      )
OF NEW ENGLAND, INC.,           )
COCA- COLA ENTERPRISES, INC.,   )
COCA- COLA ENTERPRISES          )
LONG-TERM DISABILITY PLAN A/K/A )
CORE LTD BENEFITS, and          )
AETNA LIFE INSURANCE COMPANY    )
      Defendants              )

**PLAINTIFF, KENNETH M. KANSKY'S COMPLAINT TO RECOVER ERISA
LONG-TERM DISABILITY BENEFITS;  OBTAIN A PRELIMINARY
INJUNCTION; A DE NOVO STANDARD OF REVIEW; HIPAA RELIEF;
SANCTIONS;  MISCELLANEOUS RELIEF; AND
CLAIM FOR TRIAL BY JURY**

MAGISTRATE JUDGE _____

## COMPLAINT

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"):

    (a) to recover long-term disability benefits due the Plaintiff under a Coca-Cola Enterprises, Inc. Long-Term Disability Plan, an employee welfare benefit plan for the employees of  Coca-Cola Bottling Company of New England, Inc. and the employees of Coca-Cola Bottling Company of New England, Inc.

    (b) to redress breaches of administrator and fiduciary duties  under ERISA;

    (c) to recover statutory penalties caused by the Defendants' failure to provide full disclosure as requested and as  required by ERISA;

    (d) to seek a preliminary injunction ordering and requiring the Defendants to forthwith pay to the Plaintiff, his long-term disability benefits from January 3, 2004 through the present and for as long as he remains totally disabled by the terms and conditions of the Defendant Plan, or until he attains age 65 years, or is deceased, which ever shall first occur.

-2-

(e) to pay the Plaintiff's long-term disability benefits at 75% of usual monthly salary $3416.67, which equals $2,562.50 per month, from January 3, 2004 to the present, and for as long as the within litigation is pending, and for as long as the Plaintiff remains totally disabled from working or until he attains age 65 years, or is deceased, whichever shall first occur;

(f) to recover costs of the within litigation, including attorney's fees and expenses as provided by ERISA;

(g) to recover prejudgment interest on the unpaid disability benefits due the Plaintiff at the rate of 12% per annum in accordance with the <u>Radford Trust</u> (D. Mass.) decision of Young, J., dated June 15, 2004;

(h) to have the court apply the "de novo," standard of review as opposed to the "arbitrary and capricious" standard;

(i) to award Plaintiff damages and sanctions against the Defendants jointly and severally for the violation and/or conspiracy to violate "HIPAA," i.e. to wit, Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat.1936 or the Gramm-Leach -Bliley Act ("GBL"), Publ. L.106-102, 1338 et seq. a/k/a Kennedy-Kasselbaum Act, as amended April-October, 2003; and for misconduct of participating in a scheme to wrongfully deny disability benefits so as to improve financial position of the Defendants, Coca-Cola Bottling Company of New England, Inc., Coca-Cola Enterprises, Inc., Coca-Cola Enterprises, Inc. Long-Term Disability Plan, and its Supplemental Coverage Plan to which the Plaintiff paid in after tax dollars for premiums for said Supplemental Coverage; and from the Defendant, Aetna Life Insurance Company; and

(j) to grant the Plaintiff a Trial by Jury as to all of the foregoing.

## JURISDICTION AND VENUE

2. This is an action brought pursuant to section 502(a), (e)(1) and (f) of ERISA, 29 U.S.C. § 1132(a), (e)(1) and (f). This court has subject matter jurisdiction pursuant to 29 U.S.C. 1132(e)(1) and 28 U.SD.C. § 1331. Under section 502(f) of ERISA, 29 U.S.C.§ 1132(f), the court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3. Venue is properly in this district pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the subject employee benefit plan is administered in this district, the breaches of duty herein alleged occurred in this district, and one or more of

-3-

the Defendants reside and/or are located in this district, and/or have substantial business contacts in this district pursuant to 28 U.S.C. §1391(b), and the causes of action arose in this district.

## PARTIES

4. The Plaintiff is Kenneth M. Kansky, (hereinafter called the "Plaintiff Kansky") a 33 year old, totally disabled young man who resides at 103 Aletha Rd., Needham, MA County of Norfolk, Commonwealth of Massachusetts, 02492, who was an active employee of the Defendant, Coca-Cola Bottling Company of New England, Inc. at the time he became totally disabled from working on July 8, 2003.

5. The Defendant, Coca-Cola Bottling Company of New England, Inc. was the employer for whom the Plaintiff worked as a warehouse supervisor at the Coca-Cola Bottling Company plant at 9 B Street, Needham, MA 02494. This Defendant shall hereafter be known as the Coca-Cola Bottling Co.

6. The Defendant Coca-Cola Enterprises, Inc. is an affiliate, parent company with headquarters in Atlanta, GA and oversees the operation of the employer, the Coca-Cola Bottling Company of New England, Inc. and in particular, the Human Resource Division which in part regulates and determines benefit issues for employees. This Defendant shall hereafter be known as Coca-Cola Enterprises. This Defendant is a fiduciary and an administrator of the Long-Term Disability Plan.

7. The Defendant Coca-Cola Enterprises Long-Term Disability Plan is the employee benefit welfare plan which has as its administrator and as a fiduciary, the Defendant, Coca-Cola Enterprises. This Plan is also known as and referred to as the Core LTD Plan of which the Plaintiff is a beneficiary.

8. The Defendant, Aetna Life Insurance Company, is the contract insurer and co-administrator of the Defendant Coca-Cola Enterprises Long-Term Disability Plan also known as the Core LTD Plan and has for an usual office address, the Maine Disability Service Center, PO Box 14554, Lexington, KY 40512-4554. This Defendant is also a fiduciary and an administrator of the Long-Term Disability Benefit Plan.

## FACTS

9. The Plaintiff was employed by the Defendant, The Coca-Cola Bottling Company of New England, Inc. (with training starting on or about or after April 21, 2003), and worked the night shift from 9:30 o'clock P.M. to 7:30 o'clock A.M., Monday through Thursdays every week, and in addition thereto, worked an additional 12.5 hours per week each and every Saturday, from 8:00 o'clock A.M. to 8:30 o'clock P.M.

-4-

10. The Plaintiff became totally disabled as of July 8, 2003 and has not been able to return to his position nor has he been able to, nor has he engaged in any substantial gainful employment activity since July 8, 2003.

11. The Plaintiff was paid his short-term disability benefits by the Defendant(s) from July 8, 2003 to January 10, 2004, shortly after which his application for long-term disability benefits had been filed. The Plaintiff is entitled to 75% of his usual monthly pre-disability earnings in the sum of 75% of his usual salary of $3,416.67, i.e., the sum of $2,562.50, per month as and for his long-term disability benefits.

12. The Plaintiff had been approved and had been paid his long-term disability benefits for the month of January, 2004 by Laura Wedge, Human Resources at the Defendant, Coca-Cola Bottling Company for which she received an acknowledgement dated January 22, 2004.

13. The amount due the Plaintiff for his long-term disability benefit for the month of January, 2004, in the sum of $1,600.00 (proportionately for the days of entitlement for the first month) was the correct amount of 75% of his usual monthly salary, (proportionate days) and was paid by direct deposit to his checking account. This was confirmed with Aetna Disability Service Center's, Robert L. Babb, Customer Service Representative by letter of undersigned counsel dated February 3, 2004.

14. After having sent acknowledgement of the foregoing to said Laura Wedge of Human Resources, the Defendant Coca-Cola subsequently and without the consent or knowledge of the Plaintiff, and without following the proper procedure for discontinuing previously paid long-term disability benefits, unilaterally withdrew by direct withdrawal, the amount paid by direct deposit, leaving the Plaintiff to be exposed to checks returned for insufficient funds and other related problems which have an adverse effect on an individual's credit rating, his relationship with his bank and his creditors.

15. It was during the February 3, 2004, communication with the above named Robert L. Babb that counsel for the Plaintiff first learned that the Plaintiff's approval for long-term disability benefits was still under investigation and had not been approved as the Plaintiff and counsel had been misled to believe.

16. The Plaintiff's application for long-term benefits after being paid in January, 2004, was denied on April 26, 2004, followed by a further internal appellate review resulting in a further and final notice of denial dated November 9, 2004.

17. The basis for denial was an incorrect conclusion by the Defendant Aetna that the Plaintiff suffered a pre-existing condition for which long-term disability benefits were excluded by the terms of the Plan.

18. The Plan provides that a pre-existing condition is a condition which starts during the first 12 months of an employee's long-term disability coverage, if it is caused

-5-

or contributed by a "pre-existing" condition." A disease or injury is a preexisting condition... if during the 3 months before the date the employee became covered: **(a) it was diagnosed or treated; (b) services were received for the disease or injury; or (c) the employee took drugs or medicines prescribed or recommended by a physician for that (emphasis added) condition.**

19. The Defendant Aetna willfully and deliberately ignored the report of one of the world's renowned Chronic Fatigue Immune Dysfunction a/k/a CFIDS or CFS (also known as Myalgic Encephalomyelitis or ME by the World Health Organization-inflammation of the neurological system) medical expert specialist, David S. Bell, MD, of New York, who after reviewing the history, the medical records, and after examining the Plaintiff and testing and evaluating the Plaintiff in person on July 26, 2004, determined and diagnosed him as suffering from, and being totally disabled since July 8, 2003, by Chronic Fatigue Immune Dysfunction Syndrome.

20. The only basis for the Defendants' denial of the Plaintiff's long-term disability benefits, after having first approved them in January, 2004, was that the Plaintiff had a pre-existing condition.

21. The Plan defines pre-existing condition as a condition which was diagnosed or treated within 3 months prior to the time the employee became covered by the Plan.

22. Inasmuch as the Plaintiff had never before been diagnosed with Chronic Fatigue Immune Dysfunction by any physician, he could not, and had not ever before been treated for it pursuant to part (a) of the Plan's criteria for pre-existing conditions.

23. The Plan's second criteria for having a pre-existing condition is by the employee (b) having received services for the disease or injury within the 3 month period before the time the employee became covered by the Plan.

24. Inasmuch as the Plaintiff was never before diagnosed with Chronic Fatigue Immune Dysfunction Syndrome, prior to July 26, 2004, (totally disabled as of July 8, 2003 and entitled to long-term disability benefits as of January 8, 2004), he could not, and had never received services for Chronic Fatigue Immune Dysfunction Syndrome within the 3 month period prior to the time he became covered by the Plan.

25. The Plan's third and final criteria for having a pre-existing condition so as to be denied coverage under the Plan is that (c) the employee took drugs or medicines prescribed or recommended by a physician *for that disabling condition* (emphasis added).

26. Inasmuch as the Plaintiff was never before July 26, 2004, diagnosed with Chronic Fatigue Immune Dysfunction Syndrome, he was not and could not have been taking drugs or medicines prescribed or recommended by a physician for *that disabling*

-6-

*condition.* (emphasis added).

27. Further, any physician familiar with and regularly seeing patients who have been totally disabled by Chronic Fatigue Immune Syndrome will confirm that at present and as of July 8, 2003, and for 3 months prior thereto, there was and is no known cure, treatment or satisfactory management program for the treatment of Chronic Fatigue Immune Dysfunction Syndrome.

28. Previously, in the year 2000, the Plaintiff had been disabled by an Atypical Schizoaffective Disorder.

29. He had received treatment for that and did improve with medication eventually to attempt a return to work including his attempt in April, 2003, with the Defendant employer, Coca–Cola Bottling Company of New England, Inc., where he maintained and sustained work hours of 9:00P.M. to 7:30 A.M. Mondays through Thursdays, and every Saturday from 8:00 A.M. to 8:30 P.M.

30. His Atypical Schizoaffective Disorder was being maintained by his medication and he began training for and thereafter worked his schedule from the latter part of April, 2003 up to and including July 8, 2003, when, he became totally disabled and unable to perform any substantial gainful employment activity. This was not by reason of his Atypical Schizoaffective Disorder, but by reason of Chronic Fatigue Immune Dysfunction Syndrome,- not a pre-existing illness or condition for him.

31. A copy of the January 7, 2005, confirmatory report of David S. Bell, MD, one of the worlds' leading expert clinicians and medical authorities on Chronic Fatigue Immune Dysfunction Syndrome, and his very substantial curriculum vitae ( 11 pages) is attached hereto, made a part hereof and marked, "A-1"to "A-12."

32. Although the Plaintiff's psychopharmacologist, Dr. Vuckovic, maintains and fine tunes the Plaintiff's medication for the treatment and maintenance of the Plaintiff's Atypical Schizoaffective Disorder and although it was initially believed that the Atypical Schizoaffective Disorder was the cause of the Plaintiff's total disability as of July 8, 2003, the opinion of David S. Bell, MD, by his initial report dated July 26, 2004, as reconfirmed by his follow-up explanatory report of January 7, 2005, in combination with his 11 page, detailed Curriculum Vitae, is entitled to and should be given superior weight to the current lay opinion of Clare Cody, an adjuster for the Defendant, Aetna. **Clare Cody may have conferred with one Lois Choi-Kain, MD but Lois Choi-Kain is and was practicing medicine in Massachusetts without a Massachusetts' license**.

33. Compared to the unseen reports and unseen opinions of the unknown, unnamed and unidentified, "ghost" Physician Consultant(s) and Psychiatric Consultant(s) whose words, if any, the adjuster Clare Cody has or may have paraphrased in reaching ***her opinion and***

***conclusion*** *(emphasis added)* that the Plaintiff is disqualified from receiving long-term disability benefits by reason his having been diagnosed and treated for a "pre-existing condition," the written reports and credentials of David S. Bell, MD dated July 26, 2004, and January 7, 2005, as aforesaid, should control.

34. At no time has the adjuster, Clare Cody, employed by the Defendant Aetna nor any of the other Defendants working so fervently to avoid the payment of long-term disability benefits to the Plaintiff, ever identified any and/or either and/or all of the one or more "ghost" physicians and/or psychiatrists she and they have allegedly relied upon to continue to justify denial of long-term disability benefits to the Plaintiff. Of even greater significance, neither this adjuster nor the Defendants have ever provided any copy of either of their medical consultants' identities or written reports to justify the ***medical opinions and conclusions*** which she has espoused to deny the Plaintiff his long-term disability benefits.

35. On or about January 8, 2004, when the Plaintiff filed his application for long-term disability benefits, in the interest of protecting and safeguarding certain privacy rights, and in the interest of ensuring accuracy, he signed the authorization form expressly limiting the Defendants to obtaining only **written** records and only **written** information.

36. Notwithstanding the authorization signed by the Plaintiff expressly limiting the Defendants to obtaining and reviewing only **written** information and only **written** records regarding his health and medical conditions, the said Defendants, by themselves and by their servants and agents, totally disregarded the limitations set forth in the duly executed authorization and in direct violation of HIPAA, caused and relied upon the resultant confusion, incorrect information and upon one or more "ghost" physicians and psychiatrists. All of this has resulted in a wrongful denial of benefits in a manner which was severely "arbitrary and capricious," willful and unreasonable, unfairly prejudicial to the Plaintiff and in direct violation of the HIPAA Act.

37. Further, the Plaintiff is informed, believes and therefore avers that the Defendants are obligated to pay the first $35,000. of his long-term disability benefits and are therefore ***"conflicted"*** as that term is used to determine the level of review for this action, given that the Plaintiff was finally denied his long-term disability benefits as of November 9, 2004, and has filed his appeal to this court.

38. The Defendants used any excuse to deny the Plaintiff his long-term disability benefits and/or were or pretended to be confused by determining whether a pre-existing condition did exist in an overt and obvious attempt to preclude the payment of long-term disability benefits to the Plaintiff. Therefore, counsel for the Plaintiff forwarded to the adjuster for Aetna, i.e., Clare Cody, and others at Aetna, a copy of the crucial and most recent updated decisions which should have satisfied the Defendants of their obligation to pay those long-term disability benefits to the Plaintiff. Instead, in the denial, the Defendants

-8-

referred to kidney surgery the Plaintiff underwent 14-15 years when the Plaintiff was only 18 years of age.

39. Copies of the decisions forwarded to Defendants were the decisions of  Bernard J. Glista v. UNUM Life Insurance Company of America, 378 F. 3d 113 (1st Cir. 8/11/2004), and Fought v. UNUM Life Insurance Co. of America, 379 F.3d 997, (10th Cir. 2004).

40. The Defendants received a copy of the "Glista," and "Fought," decisions but indicated by reply letter to Plaintiff's counsel words to the effect that it did not matter. The long-term disability benefits were not going to be paid to the Plaintiff regardless of the "Glista and Fought," decisions, or used words to that effect.

41. Further, the Defendants discontinued the Plaintiff's health insurance, dental insurance and life insurance benefits as of on or about September, 2004, and the Plaintiff has since been required to pay COBRA and related expenses, out-of- pocket, along with his increased co-payments for his medicine and medical care.

42. The Plaintiff has exhausted each and all and every internal and administrative remedy available to him and is therefore entitled to now pursue the relief he seeks by this action.

43. Under all of the above circumstances, the Plaintiff is also entitled to the issuance of a temporary and preliminary injunctive order by this court for the immediate payment to him of all of the unpaid retroactive long-term disability benefits due him but not paid to him by the improper conduct of the Defendants acting improperly in concert, jointly and severally, and that any further delay in the payment of these long-term disability benefits and  any further delay in the reinstatement retroactively, at no charge to the Plaintiff of his health, life and dental insurance benefits, will result in further irreparable and prejudicial harm to him.

## COUNT ONE
## CLAIM FOR LONG-TERM DISABILITY BENEFITS

44. Paragraphs 1-43 above are incorporated by reference as if separately set forth herein.

45. The Plaintiff, Kenneth M. Kansky, is, has been, and remains totally and  permanently disabled since July 8, 2003, by reason of Chronic Fatigue Immune Dysfunction Syndrome, a condition for which he was never before treated or diagnosed.

46. The Plaintiff, Kenneth M. Kansky, is entitled to long-term disability benefits for the physical disorder of totally disabling Chronic Fatigue Immune Dysfunction from January, 2004, up to and including the present, and for as long as the Plaintiff remains totally

-9-

-9-

disabled, attains age 65 years, or is deceased, whichever shall first occur.

47. The Plaintiff's rate of reimbursement of long-term disability benefits is 75% of his usual monthly income from the time he was last an active, full-time employee for the Defendant, Coca-Cola.

48. The Plaintiff's gross monthly income in July, 2003, when last an active, full-time employee for the Defendant Coca-Cola was $3,416.67 per month and his long-term disability benefits total 75% thereof, or $2,562.50 per month.

49. The Plaintiff is therefore entitled as of April 30, 2005, to 17 months of retroactive long-term disability benefits, i e, to wit the sum of $43,562.50, and the additional sums of $2,562.50. per month until the Plaintiff is no longer totally disabled, or until the Plaintiff attains age 65 years, or is deceased, whichever shall first occur.

**WHEREFORE,** for this the First Count, the Plaintiff demands judgment against the Defendants, jointly and severally, for long-term disability benefits in the sum of not less than 17 months @ $2,562.50 per month for a sum of no less than $43,562.50, together with prejudgment interest at the rate of 12% per annum plus reasonable legal fees and expenses as provided by law; and further, the Plaintiff demands judgment requiring the Defendants, jointly and severally, to continue to pay the Plaintiff's long-term disability benefits and to reinstate and maintain at no cost to him, his health insurance, life insurance and dental insurance until such time as he has attained age 65 years, is no longer disabled or has deceased, whichever shall first occur; and that he be forthwith reimbursed for the excess out-of-pocket expenses he has had to incur for COBRA and higher co-payments as the result of the Defendants having wrongfully terminated the employer provided health insurance, life insurance and dental insurance coverage from on or about September 17, 2004 to the present; and that said payments be made until all of said health, life and dental coverage is fully reinstated retroactively and he is reimbursed in full.

## <u>COUNT TWO</u>
## <u>CLAIM FOR BREACH OF DUTY OF DISCLOSURE</u>

50. Paragraphs 1-49 are incorporated by reference as if separately set forth herein.

51. On May 3, 2004, counsel for the Plaintiff made written demand by Certified Mail Return Receipt Requested for the Defendants to produce certain items and documents as provided by 29 USCA §1132 (a)-(c) inclusive.

52. The Defendants failed to produce all of the requested documents as required as a result of which the Plaintiff is entitled to recover a sanction of $110. per diem from June 3, 2004 through the present and continuing.

-10-

53. Further the willful and deliberate failure of the Defendants to provide said documents and discovery, should result in the Defendants being barred by collateral estoppel as well as by unclean hands from coming before this court to defend the within action.

**WHEREFORE,** for this the Second Count, the Plaintiff demands judgment against the Defendants, jointly and severally, for sanctions at the rate of $110. per diem from 30 days after May 3, 2004, up to the present and continuing i.e. to wit, the sum of no less than Thirty-Six Thousand, Three Hundred and 00/100 ($36,300.00) Dollars U.S. together with interest at the legal rate of 12% per annum, reasonable legal fees and expenses and costs; and the Defendant and each of them and all of them shall be and are hereby barred from defending the within action, with a default judgment to enter against the said Defendants, jointly and severally, for all sums to which the Plaintiff is entitled to be itemized herein based upon the appropriate mathematical calculations.

## COUNT THREE
## AWARD OF LEGAL FEES AND EXPENSES

54. Paragraph 1-53 are incorporated herein as if separately set forth.

55. The denial of the Plaintiff's long-term disability benefits from January, 2004 to the present and continuing was arbitrary and capricious at best, under all of the given circumstances and was knowingly wrongful and deliberate inasmuch as the Defendants jointly and severally willfully refused, failed and neglected to provide the names of any of their physician and/or psychiatric consultants relied upon by them to deny benefits; and further failed to provide many of the documents as requested and as needed for the Plaintiff to properly and fairly be apprised of the experts and their credentials as to the underlying and presumed medical basis for the wrongful denial of his long-term disability benefits by the "non-medical expert," Defendants.

56. The failure of the Defendants to provide the names and expertise of the experts relied upon by them to deny the Plaintiff's long-term disability benefits is especially improper inasmuch as the Plaintiff has been deprived of an opportunity to gauge the expertise of those medical experts, if any there were, allegedly relied upon by the Defendants.

57. The Defendants were content to use their medical experts as "ghost" consultants, if in fact they did have any such consultants, whether they had any expertise or not, in the field of Chronic Fatigue Immune Dysfunction Syndrome. The Defendants rendered the opinion that Chronic Fatigue Immune Dysfunction Syndrome is the same as an Atypical Schizoaffective mental disorder, even though any medical practitioner knowledgeable in the field knows that Chronic Fatigue Immune Dysfunction Syndrome is an inflammation of the neurological system with multiple disabling flu-like and other physical symptoms, while an Atypical Schizoaffective mental disorder is not a pre-existing condition to, nor is it Chronic Fatigue Immune Dysfunction Syndrome.

-11-

58. The Plaintiff says that as a result of the reliance of the Defendants on the opinions of "ghost" and otherwise unidentified "medical consultants," the Defendants, jointly and severally failed to provide a truthful and proper review of the Plaintiff's total disability before denying benefits based upon a claimed, albeit unfounded basis of a pre-existing condition resulting in the denial of all of the Plaintiff's long-term disability benefits and a cancellation of his health, life and dental insurance.

59.    The Plaintiff says that under these circumstances, the Defendants' conduct in the denial of long-term disability benefits followed by a cancellation of the Plaintiff's health, life and dental insurance, constituted extreme bad faith and willfulness.

60.   The Plaintiff further says that if this court orders the Defendants to pay the Plaintiff's reasonable legal fees and expenses for the time and effort devoted to this action by Plaintiff's counsel, the Defendants jointly and severally have the ability to satisfy in full, a complete award of those legal fees and expenses.

61.    Further, the Plaintiff says that it is and should be self-evident that an award of legal fees and expenses would and should deter the Defendants jointly and severally from wrongfully denying long-term disability benefits and from wrongfully canceling a disabled employees' health, life and dental insurance of other deserving claimants and beneficiaries enrolled in this welfare benefit plan as well as those enrolled in other employer controlled employee welfare benefit plans i.e. ERISA Plans.

62. The Plaintiff also says that an award of legal fees and expenses would result in significantly more benefits being properly and timely conferred upon deserving beneficiaries of this as well as other Plans.

63. The Plaintiff says that his claim for wrongfully denied long-term disability benefits and his claim for reimbursement of the COBRA payments and additional and higher co-payments required of him by the wrongful cancellation of his health, life and dental insurance coverage are meritorious and made more so by the Defendants failing to reveal the names of the experts, if any, with whom they consulted as well as the curriculum vitae of each such "ghost," expert so consulted.

64. Further, the Plaintiff says that the pursuit of these claims in this action is in the best interests of all participants of the Plan and any favorable relief granted hereunder will benefit all such participants.

65. The Plaintiff is entitled to recover reasonable legal fees, expenses and costs herein pursuant to § 502(g)(1) of ERISA, 29 USC § 1132(g).

**WHERFORE,**   for this the Third Count, and  pursuant to 29 USC § 1132(g)(1), et seq., the Plaintiff demands judgment for an award of reasonable counsel fees and expenses against the Defendants, jointly and severally, together with prejudgment interest thereon at the rate of 12% per annum and costs.

-12-
## COUNT FOUR
## VIOLATION OF HIPAA

66. Paragraphs 1-65 are incorporated by reference as if separately set forth herein.

67. In January, 2004, the Plaintiff signed and submitted an authorization to the Defendants with prescribed limitations therein to protect his privacy to the extent possible and to ensure accuracy, a function of HIPAA.

68. The restrictions and limitations set forth by the Plaintiff limited the Defendants from obtaining anything but **written** records and **written** information regarding his condition.

69. Despite the clearly worded restrictions authorizing the Defendants to be able to obtain only **written** information and **written** records, the Defendants jointly and severally violated said restriction and sought to, and did obtain verbal information and verbal records pertaining to the Plaintiff in total disregard of the restrictions and limitations specifically written into his authorization form.

70. The Defendants, their servants, agents, employees, both jointly and severally, willfully, deliberately and recklessly  did otherwise fail to honor the privacy and restrictions set forth in the Plaintiff's authorization form, obtained incorrect information, and did not obtain accurate and complete information, all to his great damage and in direct violation of HIPAA.

**WHEREFORE** for this the Fourth Count, the Plaintiff demands judgment against the Defendants, jointly and severally, for the maximum penalty of $200,000. each , or as the court may otherwise deem meet and proper, together with a separate award of legal fees and expenses,  and prejudgment interest at the rate of 12% per annum and costs.


## SUMMARY OF RELIEF SOUGHT

**WHEREFORE,** and by way of  Summary of Relief Sought, the Plaintiff Requests the court to enter appropriate orders so as to award the Plaintiff the following relief in addition to any and all other relief in favor of the Plaintiff, which this court determines to be just and proper:

(1) The Plaintiff is to recover from the Defendants jointly and severally, unpaid long-term disability benefits in the sum of  $43,562.50. together with prejudgment interest at the rate of 12% per annum; and

(2) The Plaintiff is to recover from the Defendants, jointly and severally, for the Defendants' breach of duty of disclosure as per 29 USC § 1132 (a)-(c), the sum of no less than $110. per diem  for no less than  330 days or $36,300.  and

-13-

continuing to accrue, together with prejudgment interest at the rate of 12% per annum; and

(3) The Plaintiff is to recover of the Defendants, jointly and severally, an award of legal fees and expenses in a sum to be determined by this court plus costs; and

(4) The Plaintiff is entitled to recover of the Defendants, jointly and severally, an award of $200,000. from each Defendant, for the HIPAA violations which they perpetrated plus prejudgment interest thereon at the rate of 12% per annum; and;

(5) The Plaintiff is entitled to a temporary Restraining Order and a Preliminary Injunction requiring the Defendants, jointly and severally to forthwith pay to him, his overdue long-term disability benefits as well as forthwith reinstating his health, life and dental insurance; and

(6.) The Plaintiff is entitled to an award of sanctions in the sum of $10,000,000.00 from the Defendants, jointly and severally, for the gross misconduct of the Defendants in the handling of the Plaintiff's claim for long-term disability benefits; and these Defendants, jointly and severally, shall be and hereby are forever barred from participating in any and all claims involving the determination of disability; and

(7.) The Plaintiff is entitled to the immediate restoration of his health, life and dental insurance benefits; and

(8.) The Plaintiff is entitled to any and all other further and favorable relief which this court deems to be meet and proper.

## **DEMAND FOR TRIAL BY JURY**

Inasmuch as the Defendants, jointly and severally are "conflicted," Defendants, the Plaintiff is entitled to and demands de novo review; and a trial by jury to the fullest ext permitted by law.

Dated: May 2, 2005

Kenneth M. Kansky, Plaintiff
By His Attorney,

BERNARD A. KANSKY, ESQ.
MA BBO # 258040 FED #28209
KANSKY & ASSOCIATES
468 COMMERCIAL ST #100
BOSTON, MA 02109-1020
(617) 227-2020 FX (617) 227-5717
E-Mail: Berakan@aol.com

David S. Bell, M.D.
77 South Main Street
P.O. Box 495
Lyndonville, New York 14098

Telephone: (585) 765-2060

January 7, 2005

To Whom It May Concern:

Kenneth Kansky has been seen in this office and was diagnosed as having chronic fatigue syndrome. Please see the report of July 26th of 2004. I recently read the letter from Etna saying that he was denied long-term disability claim because his disability is related to a pre-existing condition which is the schizoaffective disorder, bipolar type.

It should be noted that Mr. Kansky did have difficulties suggesting a schizoaffective disorder, however, with medications he was able to work and, in fact, was working more than 40 hours a week. His current disability is not due to the schizoaffective disorder; it is due to chronic fatigue syndrome. The nature of the disability in chronic fatigue syndrome is quite different from that of schizoaffective disorder and while he would not be diagnosed by the current research criteria put out by the Centers for Disease Control, his clinical diagnosis is very clearly chronic fatigue syndrome, also known as chronic fatigue immune dysfunction syndrome. As such, it would be reasonable to assume that he should be eligible for long-term disability claims as his current disability is not caused by the schizoaffective disorder and is most likely totally independent from that. If you have any specific questions, please do not hesitate to call.

Very truly yours,

David S. Bell, M.D.

DSB:ds
Dictated, not read.

"A 1"

# Curriculum Vitae

## David S. Bell MD, FAAP

### I. General Information

Full Name: David Sheffield Bell, MD, FAAP
Date of Birth: August 5, 1945
Place of Birth: Beverly, Massachusetts
Home Address: 12841 Roosevelt Hwy, Lyndonville NY 14098
Home Telephone: 585-765-9062
Work Address: 77 South Main Street, Lyndonville, NY 14098
Work Phone: 716-765-2099 fax 716-765-2067
Citizenship: U.S.
Date of CV: March 1, 2004

### II. Employment

Primary Care Pediatrics and Family Practice; 77 South Main St, Lyndonville, NY; 716-765-2099; September 1, 1995 - present

The Cambridge Hospital Staff Pediatrician, Private Practice May 1, 1994 - September 1,1995; 1493 Cambridge Street, Cambridge, MA 02139. Description: Pediatric private practice and clinical research on chronic fatigue syndrome (half time position)

Emergency Department Physician May 1, 1994 - May 1, 1995. National Emergency Services, Medina Memorial Hospital, Medina, New York. Description: General Emergency Medicine (half time position)

The Cambridge Hospital Staff Pediatrician July 29, 1991 - May 1, 1994 1493 Cambridge Street, Cambridge, MA 02139 Description: a) Ward Chief: Supervision of pediatric ward at Cambridge Hospital b) Director of resident education program at Cambridge Hospital for the Massachusetts General Hospital pediatric house staff and medical students of the Harvard Medical School c) Practice of primary care pediatrics at Cambridge Hospital d) Pediatrician for the Cambridge Hospital Multidisciplinary AIDS program (Zinberg Clinic) e) Director of School Health for the City of Cambridge

The Cheney Chronic Fatigue Syndrome Clinic Charlotte, NC. Feb 6, 1991 - Nov 1991. Description: Travel to Charlotte five days a month. Pediatric evaluations and ongoing research in chronic fatigue syndrome in children.

Emergency Department Physician January 1, 1990 - July 1991. Coastal Emergency Services, Medina Memorial Hospital, Medina, New York. Description: General Emergency Medicine (full time position)

Pediatric Supervisor Jan 15, 1990 - May, 1990. Rochester General Hospital, Rochester, New York. Description: Supervision of pediatric residents in primary care pediatrics

Private Practice Dec 1979 - Nov 1990. 15 Lake Avenue, Lyndonville, New York 14098. Description: Primary care pediatrics;

Consultant to the University of Qatar Sept 1, 1986 - Jan 1, 1987.University of Qatar, Doha, Qatar. Description: Advisor to the University of Qatar medical school

Pediatrician for the Birth Defects Clinic July 1978 - Dec 1979. Strong Memorial Hospital, Rochester, New York. Description: Service coordination for handicapped children.

## III. Education

Boston University School of Medicine 1967-1971, MD Degree
Harvard University 1963-1967, AB Degree English Literature

## IV. Post Doctoral Training

McMaster University, Hamilton, Ontario, Canada. 6/75 - 6/76 Fellowship in Pediatric Chronic Disease
McMaster University, Hamilton, Ontario, Canada. June 1975 - June 1976 Fellowship in Family Therapy
McMaster University, Hamilton, Ontario, Canada. June 1974 - June 1975 Senior Pediatric Residency
Kennedy Hospital, Brighton, Massachusetts. June 1973 - December 1973 Fellowship in Pediatric Chronic Disease
Boston City Hospital, Boston, Massachusetts. June 1972 - June 1973 Junior Pediatric Residency
Boston City Hospital, Boston, Massachusetts. June 1971 - June 1972 Pediatric Internship

## V. Certification

Basic Life Support (B.L.S.) American Red Cross, Waterport, NY. 6/2/03
Neonatal Advanced Life Support (N.A.L.S.) Amer Academy of Pediatrics, Medina, NY. 3/11/98
Basic Life Support (B.L.S.) American Red Cross, Medina, NY. 10/23/95
Neonatal Advanced Life Support (N.A.L.S.) Amer Academy of Pediatrics, Medina, NY. 10/18/95
Advanced Trauma Life Support (A.T.L.S.), American Academy of Surgeons, 4/22/94
Advanced Cardiac Life Support (A.C.L.S.), American Heart Association, Boston, MA. 2/3/94
Physician's Recognition Award, American Medical Association, Chicago, Il. 2/94
Basic Life Support (B.L.S.) American Red Cross, Cambridge, MA. 6/93
Physician's Recognition Award, American Medical Association, Chicago, Il. 2/91
Advanced Trauma Life Support (A.T.L.S.), Amer Acad of Surgeons, Rochester, NY. 2/16/90
Advanced Cardiac Life Support (A.C.L.S.), American Heart Association, Buffalo, NY. 12/8/89
Pediatric Advanced Life Support (P.A.L.S.), American Heart Association, Phil, PA. 11/8/89
Basic Life Support (B.L.S.), American Red Cross, Medina, New York. 12/11/89
Physicians Recognition Award, American Medical Association, Chicago, Il. 8/6/86
Fellow of the American Academy of Pediatrics, Lic # 19191, 7/1/76 to Present
Board Eligible, Royal College of Physicians - Paediatrics (Canada), 6/1/76
Certification in Family Therapy, McMaster University. 6/1/76
New York State Medicaid Provider Number: 00619310

## VI. Medical Licenses

New York State Medical License Lic #132862 8/1/77 to Present.
Massachusetts Medical License Cert#34821; 1972 - 1976; 6/7/91 - 9/95
North Carolina State Medical License Lic # 39919 1/26/91 - 7/1/92.
D.E.A. Registration Lic #AB7896648 8/1/77 to Present.
College of Physicians and Surgeons (Can) Lic #28124 6/73 - 6/76

## VII. Malpractice Insurance

Medical Liability Mutual Insurance Company; 2 Park Avenue, Rm 2500, NY, NY 10016; Policy # MP 045384-5 9/1/95 - present
Medical Malpractice Joint Underwriters Association of Massachusetts (JUA); 101 Arch Street, Boston, MA 02205 (617-330-1755) 7/30/91 - 9/1/95; Policy #13610
Century American Insurance Company; 2828 Croasdaile Drive, Post Office Box 15879, Durham, NC. 27704 1/1/90 - 7/1/91 (Coverage for NY Emergency Department services only)
Medical Protective Company; Fort Wayne, IN. 46885 2/1/91 - Present (Coverage for North Carolina Practice Only)

Physicians Reciprocal Insurers (PRI) 111 East Shore Road, P.O.Box 4300, Manhasset, NY. 11030 2/24/83 - 1/1/91; Tail Cover Purchased 1/1/91; Policy # 28962

HANYS Insurance Company, Inc. 74 North Pearl Street, Albany, NY. 12207 ;7/1/88 - 10/1/90; Policy Number 9012000590 (Excess Liability Coverage)

Medical Malpractice Insurance Association (MMIA);130 William Street, NY, NY.10038 (212-962-0210) 8/24/79-2/24/83;Policy 82IP132862-4

As of 11/01/03 there have been no medical malpractice claims filed or pending.

## VIII. Hospital Appointments

**Courtesy**
Medina Memorial Hospital, 200 Ohio Street, Medina, N Y. 14107; 2/1/01 to present

**Inactive or Prior Appointments**
Medina Memorial Hospital, 200 Ohio Street, Medina, N Y. 14107; 12/79 - 7/91. 5/1/94 to 2/1/01; Active medical staff

The Cambridge Hospital; 1493 Cambridge Street, Cambridge MA 02139;10/91-9/1/95. Withdrawal from active staff because of move to New York 9/1/95

Massachusetts General Hospital; Fruit Street, Boston MA, Assistant in Pediatrics 2/92 - 5/95. Withdrawal from active staff because of move to New York 9/1/95

Mount Auburn Hospital; Mount Auburn St., Cambridge, MA 02138. 11/91 - 5/95. Withdrawal from active staff because of move to New York 9/1/95

Roswell Park Memorial Institute; Elm and Carlton Streets, Buffalo, N Y. Consultant, Department of Clinical Immunology, 12/22/88 - 7/1/91. Withdrawn because move to Boston 7/91

Strong Memorial Hospital; Rochester, NY. Instructor in Pediatrics, 6/77 - 7/91 Withdrawn because move to Boston 7/91

## IX. Academic Appointments

State University of New York at Buffalo; Clinical Assistant Professor of Pediatrics 4/02 to present
Harvard Medical School; Instructor in Pediatrics, 7/91 - 9/95
State University of New York at Buffalo; Consultant in Clinical Immunology, 12/88 - 7/91
University of Rochester; Clinical Instructor in Pediatrics, 9/77 - 7/91

## X. Other Professional Positions and Committee Assignments

Date Organization

9/27/03-present. Chairman, Chronic Fatigue Syndrome Advisory Committee, Department of Health and Human Services, Office of Public Health and Science.
5/1/02 Guest review - *Pediatrics*
4/1/02 Guest review - *Journal of Pediatrics*
5/20/01 Royal College of Paediatrics and Child Health, England; Observer/participant in CFS meeting on young persons questionnaire
1/26/01 Co-chair Pediatrics section, AACFS Clinical Conference; 1/27/01.
12/4/00 Panel member for NIH consensus committee on dysautonomia in chronic fatigue
3/00 Planning Board for National Institutes of Health "State of Science Conference on Chronic Fatigue Syndrome"
1/15/00 Guest Review - *Journal of Pediatrics*
10/1/98-1/01 Vice President, American Association for Chronic Fatigue Syndrome
10/1/98-10/1/99 Vice President, Medina Memorial Hospital Medical Staff
5/1/98 Advisor to the Chronic Fatigue Syndrome Coordinating Committee, National Institutes of Health. Pediatrics session
1/1/98-present Medical Advisor, Red Springs Communication
1/1/98-1/2001 Chairman, Department of Pediatrics, Medina Hospital, Medina, NY 14103
1/1/98-1/2001 Chairman, Obstetrics-neonatal committee, Medina Hospital, Medina, NY

"A 4"

8/97-10/98 Secretary/Treasurer. Medina Hospital Medical Staff

11/12/97 Bioethics Conference Chairperson, "Decision making at the end of life" Medina NY

2/97 Guest Editor of Pediatric edition of The Journal of Chronic Fatigue Syndrome

10/96-1/01 Chairperson of the clinical affairs subcommittee for the American Association for Chronic Fatigue Syndrome

1/96-10/96 Chairperson of the clinical session of the 2nd AACFS Clinical Conference

11/95-1/2001 Chairman of the Bioethics committee of Medina Memorial Hospital

11/95 Guest reviewer for special edition of the Journal for Psychiatric Research

4/95-10/96 Editor: American Association for Chronic Fatigue Syndrome Newsletter

5/94-1/01 Board of Directors, American Association for Chronic Fatigue Syndrome

10/93-3/94 Immunization Action Project Advisory Board

7/93-3/94 Medical Executive Committee, Cambridge Hospital

4/93-present Member of the American Association for Chronic Fatigue Syndrome

10/92-9/94 Physicians Review Committee of the Center for Disease Control chronic fatigue syndrome project. Abt Associates, Cambridge, MA.

7/92-present Editorial Board of The Journal of the Chronic Fatigue Syndrome

7/92-10/97 Board of Directors, The CFIDS Association of America, Charlotte, NC.

2/92-12/95 Medical Advisory Board of the International Federation of M.E. (Myalgic Encephalomyelitis) Associations.

11/91-3/94 General Pediatric Education Review Group, Massachusetts General Hospital, Harvard Medical School (Resident Primary Care Curriculum Planning)

11/91-3/94 House Staff Training and Education Committee, Massachusetts General Hospital, Harvard Medical School (Educational Planning of Harvard Medical School Pediatric House Staff)

8/91-3/94 Residency Education Committee, Cambridge Hospital, Harvard Medical School Development of educational training for Pediatric residents

8/91-3/94 Pharmacy and Theraputics Committee, The Cambridge Hospital

8/91-1/94 Strategy and Program Subcommittee, The Cambridge Hospital

8/91-1/93 Tobin School Air Quality Committee (To evaluate issues regarding "sick building syndrome" at the Tobin School in Cambridge, MA)

7/91-3/94 Cambridge Hospital Emergency Ward Committee

7/91- 7/1/94 School Health Task Force, City of Cambridge

7/91-present Advisor to the Association of Young People with Myalgic Encephomyelitis

7/91-8/99 CFIDS Association of America, Scientific Advisory Committee

1/90-7/92 CFIDS Association of America, Medical Advisor

1/90-6/91 Vice President, World Life Institute, Waterport New York

1976-present Member of the American Academy of Pediatrics

## XI. Honors

5/1/02 Selection for entry in One Thousand Great Americans, International Biographical Center, Cambridge, England.

10/00 Opening Address at State of the Science Conference on CFS National Institutes for Health  ,

9/98 Inclusion in Marquis Who's Who in America

10/97 Nominated for the Marquis Who's Who in America

3/95 Inclusion in Sterling Who's Who Directory, New York, NY

1/90 Inclusion in the Chronic Fatigue Association Honor Roll, Charlotte, North Carolina

## XII. Invited Lectures

2003

Chronic fatigue syndrome in adolescents. New York State Association of School Nurses 3/27/04

2003    •

New Developments in Myalgic Encephalomyelitis; Burlington, Ontario ME Society, 10/1/03

"A 5"

2002
Orthostatic Intolerance in chronic fatigue syndrome; Vanderbilt University; September 10, 2002

2001
Evaluation of Orthostatic Tolerance in the Office Setting. New Developments in the Clinical Management of CFS; Monmouth medical center 10/14/2001
Thirteen year follow-up of Children and Adolescents with CFS. Royal College of Physicians, London, England 5/23/01 .
Thirteen year follow-up of Children and Adolescents with CFS. American Association for Chronic Fatigue Syndrome Research and Clinical Conference (AACFS); 1/27/01.
Treatment Options for CFS. American Association for Chronic Fatigue Syndrome Research and Clinical Conference (AACFS); 1/29/01

2000
Provision of Care for Invisible Disabilities Chatham Health Dept. Chatham, MA 12/10/00
Chronic fatigue syndrome and primary care - Opening Address at State of the Science Conference on CFS NIH
Invisible disabilities Conference on access to disability; Hyannis, MA; 12/7/00

1998
"Ask the Experts Panel" 4th American Association for Chronic Fatigue Syndrome conference, Boston, MA 10/10/98
Co-Chairperson Pediatric Panel, 4th American Association for Chronic Fatigue Syndrome conference, Boston, MA 10/10/98
"15 year follow-up of children with chronic fatigue syndrome" ; Conference 98, Association for Youth with Myalgic Encephalomyelitis, Milton Keynes, England 8/30/98
"New Developments in Chronic Fatigue Syndrome" ; London, England 8/26/98
"Chronic Fatigue Syndrome"; Connecticut CFIDS Association, Hartford Ct 6/6/985/22/98
"15 year follow-up of children with chronic fatigue syndrome" Lehigh Valley Medical Education Series, Allentown, PA. 5/20/98.
"15 year follow-up of children with chronic fatigue syndrome" Chronic fatigue syndrome coordinating committee, Department of Health and Human Services, Hubert H Humphrey Building, 4/28/98
"Current considerations concerning chronic fatigue syndrome in adolescents" Center for Disease Control, Atlanta, Ga 3/2/98
"Treatment Consensus" Panel Moderator; The Clinical and Scientific Basis for Chronic Fatigue Syndrome, Sydney, Australia, 2/14/98
"Spectrum of Illness in Pediatric CFS", The Clinical and Scientific Basis for Chronic Fatigue Syndrome. Sydney, Australia, 2/14/98
"Blood volume, vassopressin and CFS", The Clinical and Scientific Basis for Chronic Fatigue Syndrome, Sydney, Australia, 2/15/98
"Review of chronic fatigue syndrome" Dunedin Hospital Grand rounds, Dunedin, New Zealand 2/24/98
"Review of chronic fatigue syndrome" Christchurch Physician rounds, Christchurch, New Zealand 2/20/98

1997
"Medical Ethics: Role in Primary Care" Medina, NY,11/12/97
"Chronic Fatigue Syndrome in Children" Pediatric ME Symposium, Copenhagen Denmark, 8/22/97
"Chronic Fatigue Syndrome in Children" Oslo, Norway, 8/26/97

1996
"Diagnostic criteria for chronic fatigue syndrome in children under ten." 1996 American Association for Chronic Fatigue Syndrome Research Conference, San Francisco, CA 10/11/96
"Welcoming Address" 1996 American Association for Chronic Fatigue Syndrome Clinical Conference, San Francisco, CA 10/13/96
"Chronic fatigue syndrome in adolescence." 1996 AACFS Clinical Conference, San Francisco, CA 10/13/96
"Recent Advances in Chronic Fatigue Syndrome" Dayton, Ohio 5/10/96
"Chronic Fatigue Syndrome" Environmental Health Nursing Annual Meeting, Rochester, NY 5/3/96

"A 6"

### 1995
"Children with Chronic Fatigue Syndrome" CFIDS Association Meetings, 9/23/95
"Children with Chronic Fatigue Syndrome", Midwest CFS Conference. Flint Michigan. 4/7/95
"Children with Chronic Fatigue Syndrome", Connecticut State Education Department Conference of the Education of Children with Chronic Fatigue Syndrome, Waterbury, CT 3/1/95
"Myalgic Encephalomyelitis in America" ME Association meetings, Otago, New Zealand 2/10/95
"Children with Myalgic Encephgalomyelitis", ME Association meetings, Otago, New Zealand 2/10/95
"A Review of Chronic Fatigue Syndrome" Grand Rounds at The Berkshire Hospital, 1/12/95

### 1994
"A Review of Chronic Fatigue Syndrome" Grand Rounds at The Cambridge Hospital, Cambridge MA; 11/1/94
Co-Chair of Session IX: CFS in Children and Adolescents; 1994 American Association for Chronic Fatigue Syndrome Clinical Conference; Ft Lauderdale, FL 10/10/94.
"Ask the Experts": Panel Discussion. American Association for Chronic Fatigue Syndrome Clinical Conference, 10/9/94.
"Chronic Fatigue Syndrome" Grand Rounds Berkshire Medical Center. 10/28/94.
"Chronic Fatigue Syndrome" Grand Rounds Manchester General Hospital, Manchester NH. 9/7/94.
"Proposed Diagnostic Criteria for CFS in Children" Massachusetts CFIDS Association, Newton-Wellesley Hospital 65/25/94.

### 1993
"Proposed Diagnostic Criteria for CFS in Children" Case Definition Conference; Centers for Disease Control, Atlanta, GA, 9/27/93
"Chronic Fatigue Syndrome - Recent Advances" Massachusetts CFIDS Association Newton MA 11/8/93
"CFS in Children" Rhode Island Hospital, 5/23/93
"ME/CFS in Children" 3rd Annual Principal Investigator Scientific Retreat. HEM Pharmaceuticals.1/8/93

### 1992
"Chronic Fatigue Syndrome: Review "American Academy of Family Practice 44th Annual Meeting. San Diego CA; 10/16/92
"Children with Myalgic Encephalomyelitis" Child Study Day, ME Association, Newcastle, GB10/12/92
"Juvenile primary fibromyalgia syndrome and chronic fatigue syndrome in adolescents"1st International CFS research conference, Albany, NY 10/3/92.
"Chronic fatigue syndrome in children"1st International CFS clinical conference, Albany, NY 10/2/92.
"CFIDS in Children, Recent Advances" University of South Florida College of Medicine; 3/14/92

### 1991
"Sick Building Syndrome - Possible Relationship to Chronic Fatigue Syndrome?" Harvard School of Public Health Harvard Medical School, Boston, MA; 12/9/91
"Chronic Fatigue Syndrome - Recent Advances" Massachusetts CFIDS Association, Newton MA 12/8/91
"Chronic Fatigue Syndrome" 17th Annual Symposium on Infection Control Rochester, NY; 10/25/91
"Chronic Fatigue Syndrome" 10th Annual Medical-Surgical Conference, Buffalo, New York; 10/25/91
"Chronic Fatigue Syndrome" 43rd Annual Convention of The American Academy of Family Physicians Washington, DC 9/27/91
"Chronic Fatigue Syndrome in Children" Pediatric Grand Rounds Harvard Medical School, The Cambridge Hospital; 5/24/91
"Chronic Fatigue Syndrome in Children" New Hampshire CFIDS Support Group Concord, NH, 5/21/91
"Chronic Fatigue Syndrome Physicians Roundtable", New Orleans; 5/18/91

### 1990
"Chronic Fatigue Immune Dysfunction Syndrome in Children" Pediatric Grand Rounds, Rochester General Hospital, 12/15/90
"Overview of Chronic Fatigue Syndrome" University of Rochester Chronic Fatigue Symposium, Rochester, NY. 12/5/90
"Retroviral Sequences in Children with Chronic Fatigue Syndrome" The CFIDS Association 1990 Research

Conference Mecklenburg County Medical Society Charlotte, NC. 11/17/90

"Radiation Carcinogenesis" Radiation Emergency Management Seminar Genessee Hospital, Rochester, NY. 10/30/90

"Chronic Fatigue Syndrome" Occupational Health Nurses Association Annual Meeting Buffalo, NY 9/21/90

"Chronic Fatigue Syndrome : Well into the 90's: Choices and Changes in Women's Health" Rochester General Hospital, 9/19/90

"Retroviral Sequences in Children with Chronic Fatigue Syndrome" XI th International Congress of Neuropathology Kyoto, Japan. 9/4/90.

"Chronic Fatigue Syndrome in Children" Univ of Oregon Portland, Oregon. 7/14/90

"Chronic Fatigue Syndrome in Children" First Annual CFIDS Lecture, University of Massachusetts, Worcester, MA. 6/2/90

"Myalgic Encephalomyelitis/Chronic Fatigue Syndrome in Children" Myalgic Encephalomyelitis - First World Symposium London, UK. 4/11/90

"Chronic Fatigue Syndrome: The Role of Psychiatry" Psychiatry Grand Rounds. University of Rochester, NY. 4/4/90

"Radiation Hazards: Induction of Malignancy" Radiation Emergency Management Seminar Rochester, NY. 3/9/90

### 1989

"Chronic Fatigue Syndrome in Children: Role of Symptom Severity Rating" Chronic Fatigue Syndrome and Fibromyalgia: First International Conference Los Angeles, California. 2/16/89.

"Chronic Fatigue Syndrome - A Specific Disease" Management of Infectious Diseases in the School Setting New York State Association of School Nurses Rochester, NY. 11/10/89

"Chronic Fatigue Syndrome in Children: A Review" The First Chronic Fatigue Syndrome Great Lakes Conference, The Medical College of Wisconsin; Milwaukee, WI. 10/21/89

### 1988

"Chronic Fatigue Syndrome" Grand Rounds: DeGraf Hospital N.Tonawanda NY12/14/88

"Chronic Fatigue Syndrome in Children" Chronic Fatigue Syndrome Symposium Annaheim, CA11/22/88

"Chronic Fatigue Syndrome: Round Table Discussion" RI CFS Symposium Newport, RI. 10/21/88

"Chronic Fatigue Syndrome: Clinical Presentation in Children" Third International Symposium on Epstein- Barr Virus and Associated Malignant Diseases Rome, Italy. 10/6/88

"Chronic Fatigue Syndrome" Grand Rounds: Mount St. Mary's Hospital, Niagara Falls, NY. 6/27/88

"Chronic Fatigue Syndrome: Clinical Aspects in Children" The National CFS Association Meeting, Kansas City, Kansas. 5/21/88

"Epidemiology of the Chronic Fatigue Syndrome" The National Conference (Australia) of the ME Society Adelaide, Australia. 3/12/88

### 1987

"Chronic Fatigue Syndrome - Clinical Presentation" The CEBV Assoc Meeting Portland, OR11/17/87

## XIII. Invited Reviews

Gerrity TR, Bates J, Bell DS, Chrousos G, Furst G, Hedrick T, Hurwitz B, Kula RW, Levine SM, Moore RC, Schondorf R. Chronic Fatigue Syndrome: What Role Does the Autonomic Nervous System Play in the Pathophysiology of This Complex Illness? Neuroimmunomodulation 2002 Dec;10(3):134-141

Bell DS. Chronic Fatigue Syndrome. in Stockman JA, Lohr JA. Ambulatory Pediatrics. W.B. Saunders Company . 2001 p74.

Bell DS, Chester A, Levine PH, Rowe PC, Natelson BH. Chronic fatigue syndrome:can it be treated? Medical Crossfire.1999; 1:36-45.

Bell DS. Guest Editorial. Journal of Chronic Fatigue Syndrome.1997;3:1-2.

Bell DS. Diagnosis of CFS in Children and Adolescents: Special Considerations. In Clinical Management of Chronic Fatigue Syndrome. Haworth Press; Binghamton, NY.1996. p. 29-39.

Bell DS. Chronic fatigue syndrome in children: a review. Journal of Chronic Fatigue Syndrome.1995;1:9-33

Bell DS. Diagnosis of chronic fatigue syndrome in children and adolescents: special consideration. JCFS. 1995; 1: 29-36.

Bell DS. Chronic fatigue syndrome update. Postgrad Med 1994; 96:73-81.

Bell DS, Concemi P. Chronic fatigue syndrome: psychotropic or immunologic therapy? CNS Drugs. 1994;1:348-355.

Bell DS. Book Reviews: Pediatric Diagnosis. Current Surgery 1993; 50:1-2.

Bell DS. Chronic Fatigue Syndrome: Recent Advances in Diagnosis and TreatmentPostgrad Med1992;91:245-52.

Bell DS. Children with ME/CFIDS: Overview and review of the literature. In Hyde BM, Ed. The Clinical and Scientific Basis of Myalgic Encephalomyelitis Chronic Fatigue Syndrome. Nightingale Research Foundation, Ottawa, Canada,1992 p.209-18.

Bell DS, Bell KM. The post-infectious chronic fatigue syndrome: diagnosis in childhood. In Ablashi D.V. et al, Eds. Epstein-Barr Virus and Human Disease Humana Press, 1989, 412-417.

## XIV. Papers Published

Bell DS, Jordan K, Robinson M. Thirteen year follow-up of adolescents with chronic fatigue syndrome. Pediatrics. 2001107; 994-998.

Streeten DH, Thomas D, Bell DS. The roles of orthostatic hypotension, orthostatic tachycardia, and sub-normal erythrocyte volume in the pathogenesis of the chronic fatigue syndrome. Am J Med Sci.2000; 320(1):1-8.

Streeten D, Bell DS. Circulating Blood Volume in Chronic Fatigue Syndrome. JCFS.1998; 4: 1-12

Bell DS. Illness onset characteristics in children with chronic fatigue syndrome and idiopathic chronic fatigue. Journal of Chronic Fatigue Syndrome.1997;3:43-53.

Ash-Bernal R, Wall C, Komaroff A, Bell D, Oas JG, Payman RN, Fagioli LR. Vestibular function test anomalies in patients with chronic fatigue syndrome. Acta Otolaryngol (Stockh).1995; 115: 9-17.

Bell DS, Concemi P. Chronic fatigue syndrome: psychotropic or immunologic therapy? New Ethicals (New Zealand) Adis International; September1994;1-6.

Bell DS, Bell KM, Cheney PR. Primary juvenile fibromyalgia syndrome and chronic fatigue syndrome in adolescents. Clinical Infectious Diseases. 1994; 18 Suppl 1: S21-S23

Lieberman J, Bell DS. Serum angiotensin-converting enzyme as a marker for the chronic fatigue immune dysfunction syndrome: a comparison to serum angiotensin-converting enzyme in sarcoidosis. American Journal of Medicine. 1993; 95:407-12.

Komaroff AL, Bell DS, Cheney PR, Lo S-C. Absence of antibody to mycoplasma fermentans in patients with chronic fatigue syndrome. Clinical Infectious Deseases. 1993; 17(6): 1074-5

Terunuma H, Bell DS, Maul G, Hilliard B, Cheney PR, Koprowski H, DeFreitas E. Isolation of a human retroviral-like agent related to human T lymphotropic virus type II. Submitted for publication

Gunn WJ, Komaroff AL, Levine SM, Connell DB, Bell DS, Cheney PR. Inability of Retroviral Tests to Identify Persons with Chronic Fatigue Syndrome. CDC MMWR February 19, 1993.

DeFreitas E, Hilliard B, Cheney P, Bell D, Kiggundu E, Sankey D, Wroblewska Z, Palladino M, Woodward JP, Koprowski H. Retroviral Sequences Related to human T-lymphotropic virus type II in patients with chronic fatigue immune dysfunction syndrome. Proc. Natl. Acad. Sci. 1991; 88:2922-2926.

Bell KM, Cookfair D, Bell DS, Reese P, Cooper L. Risk factors associated with chronic fatigue syndrome in a cluster of pediatric cases. Rev Inf Dis1991; 13 (Suppl 1): S32-38.

## XV. Other Medical Publications

Bell DS. Treating Pediatric CFS. The Research Review. 2000; 1:1-5.

Streeten D, Bell D. Long- and short-term blood pressure and RR-interval variability and psychosomatic stress in chronic fatigue syndrome [letter]. Clin Sci 1999; 97:319-320.

Bell DS. Spectrum of Illness in Pediatric CFS. Proceedings of The Clinical and Scientific Basis for Chronic Fatigue Syndrome, Sydney, Australia, 2/14/98

Bell DS. Blood volume, vassopressin and CFS; Proceedings of The Clinical and Scientific Basis for Chronic Fatigue Syndrome, Sydney, Australia, 2/14/98

Streeten D, Bell DS, Thomas FD. Circulating Blood Volume in Chronic Fatigue Syndrome. Proceedings of VIII International Symposium on the Autonomic Nervous System, American Autonomic Society. Honolulu. Hawaii 11/2/97.

Bell DS, Ernst SG, Partin JS, Aprille JR. Muscle Mitochondria studies in chronic fatigue syndrome. Proceedings of the American Association for Chronic Fatigue Syndrome Research Conference,10/94.

Bell DS. Chronic fatigue syndrome [Letter]. Am J Psychiat 1992; 149: 1753.

Lieberman J, Bell DS. Serum angiotensin-converting enzyme as a marker for the chronic fatigue immune dysfunction syndrome. Poster Presentation. Seventh annual Centers for Disease Control Conference on Chronic Disease, Salt Lake City, Utah, October 21-23, 1992.

Bell DS, Bell KM, Cheney P. Juvenile primary fibromyalgia symdrome and chronic fatigue syndrome in adolescents. In Proceedings: International CFS/ME Research Conference, Albany, NY 10/4/92

Lieberman J, Bell DS. Serum angiotensin converting enzyme (SACE):A diagnostic aid for chronic fatigue syndrome [Abstract]. Clin Res 1991; 39:129A.

Gunn WJ, Komaroff A, Levine S, Connell DB, Bell DS, Cheney PR.Multi-lab retrovirus test results for CFS patients from three distinct geographical areas. In Proceedings: International CFS/ME Research Conference, Albany, NY 10/4/92.

Bell DS, Cheney P. Reversed CD4/CD8 ratio in three adolescents with chronic fatigue syndrome. [Abstract] In Proceedings: International CFS/ME Research Conference, Albany, NY 10/4/92.

DeFreitas E, Hilliard B, Cheney P, Bell D, Kiggundu E, Sankey D, Wroblewska Z, Koprowski H. Evidence of Retrovirus in Patients with Chronic Fatigue Immune Dysfunction Syndrome [Abstract]. XIth International Congress of Neuropathology; Kyoto, Japan, 9/90.

Bell DS. Introduction. In Feiden, K Hope and Help for Chronic Fatigue Syndrome Prentice Hall Press, NY 1990

Cheney PR, Dorman SE, Bell DS. Interleukin-2 and the chronic fatigue syndrome [letter]. Ann Intern Med. 1989; 110: 321.

Warner CL, Cookfair DL, Heffner RR, Bell DS, Ley D, Jacobs L. Neurologic abnormalities in the chronic fatigue syndrome [Abstract]. Neurology1989; 39(Suppl 1):420

Warner CL, Cookfair D, Heffner R, Bell D, Ley D, Jacobs L. Neurologic Abnormalities in the Chronic Fatigue Syndrome. Poster Presentation at the 1989 meeting of the American Acadademy of Neurology. Chicago, Ill, March 1989.

Bell DS, Bell KM. Chronic Fatigue Syndrome: Clinical Presentation in Pediatrics. Proc. 3rd International Epstein-Barr Virus Association Meeting [Abstract]. Rome, Italy. October 3-7, 1988.

Bell DS, Bell KM. "Chronic Fatigue Syndrome: Diagnostic Criteria" [Letter]. Ann Intern Med1988;109(2):167.

Bell KM, Cookfair D, Reese P, Bell DS, Cooper G. Risk Factors Associated with Chronic Fatigue Syndrome in Children [Abstract]. Am J Epidemiol128:899 1988.

## XVI. Books Published

Bell, DB. Faces of CFS. Robinson Publications, 2000

Bell DS, Pollard J, Banks M, Robinson M, Robinson T, Mosler D. A Parents Guide for Children with Chronic Fatigue Syndrome. Haworth Press, October 1998

Bell DS. The Doctor's Guide to Chronic Fatigue Syndrome Addison-Wesley, Boston, 1994.

Bell DS, Donev S. Curing Fatigue. Rodale Press; Emmaus, PA, 1993.

Bell DS. CFIDS: The Disease of a Thousand Names Pollard Publications, Lyndonville, NY, 1991.

Bell DS. A Time To Be Born Wm Morrow and Co., New York City, 1974.

## XVII. Continuing Medical Education

2004

A) Update in General Internal Medicine for Subspecialists; Harvard Medical School Department of Continuing Medical Education Boston, MA, February 2-6, 2004; 35.5 Category I credits.

2003

A) The 4 myths of mild asthma. Medical World Conferences, Rochester New York. February 15, 2003; 4 hours category I.

B) Infection Control Course, New York State, J. Crane, Medina Memorial Hospital; 2/18/03. 1 Hour Category I credit.

C) Preventative cardiology; University of Cincinatti College of Medicine; March 14, 2003; 2 hours Category I.

D) Primer for Effective Diabetes Management; CEU Online; 4/1/03; 1 hour Category I.

E) Clinical Research: One manuscript in preparation.

F) Basic life support; AED, Waterport NY 6/2/03 3 hours category I

G) Migraine Update for Primary Care, Rochester, NY 6/3/03; 4.25 hours category I.

H) 30th Refresher Course in Family Practice; Lawrence Convention Center, Pittsburgy PA; 6/12/03-6/14/03; 22.5 Category I hours.

I) Prescriber's Letter; PO Box 8190 Stockton, CA; 3 hours Category I.


2002

Primary Care Internal Medicine, Principles and Practice; Harvard Medical School, Department of Continuing Education; Boston, MA; Sept 30 - October 4, 2002;38.5 Category I credits

Atypical Antidepressants; Eli-Lilly continuing education Series, Buffalo, NY 2/12/02; 1 hour Category I.

Prescriber's Letter CME; Therapeutic Research Center, Stockton, CA; 7.0 hours Category I.

Practical Reviews in Family Medicine; Albert Einstein College of Medicine; 1/12/2002 thru 5/30/2002; 4 hours Category I.


2001

Prescriber's Letter CME; Therapeutic Research Center, Stockton, CA; 9.0 hours Category I.

Practical Reviews in Family Medicine; Albert Einstein College of Medicine; 1/12/2000 thru 11/30/2001; 9 hours Category I.

Practical Reviews in Pediatrics; Johns Hopkins Medical Institutions Continuing Medical Education; 1/12/2000 thru 11/30/2001; 18 hours Category I

New Developments in the Clinical Management of CFS; Monmouth medical center 10/14/2001; 3 hrs Cat I.

Pediatric Infectious Diseases. University of Rochester. 9/20/01; 6.75 Cat I hr

Myalgic Encephalomyelitis, New Developments. Royal College of Physicians, London England; 6 hours, no US category assigned. 5/20/01

Asthma and allergic disease; Blue Cross series; Dr. Condrmni, Rochester NY; 4/18/01; 1 hr Cat I.

NIH/US Department of Health and Human Services: Chronic Fatigue Syndrome State of the Science Conference; 3/09/01; 12 hrs Category I credit.

American Association for Chronic Fatigue Syndrome Research and Clinical Conference; University of Calif; Seattle, WA; 1/26-1/29/01; 22.5 hrs Cat I


2000

Reviews in Family Medicine, Albert Einstein College of Medicine - Category I; 9 hours (estimated)

Reviews in Pediatrics, Albert Einstein College of Medicine - Category I; 21 hours

Dysautonomia in chronic fatigue syndrome, Washington DC; 14 Hours; no category assigned; 12/3-12/4.

Controversies in Obesity Management, Annenberg Center, Buffalo, NY; 2.5 hours Cat I; 6/28/00

American Academy of Pediatrics, Spring session; 36 hours Cat I; 5/12/00-5/16/00

Pediatric Advanced Life Support-retraining; University of Rochester; 4 hours Category I; 1/11/00


1999

Neurology for the Primary Care Provider; University or Rochester, Rochester New York; 5 hours Category I - 12/9/99

Treating Attention deficit disorder; Rochester Academy of Medicine; 1 hour Category I; 3/18/99.


1998

Primary Care Internal Medicine: Principles and Practice. Harvard Medical School 11/2/98-11/6/98; 41 hours Category I credit.

Primary Care Internal Medicine: Principles and Practice. Harvard Medical School 11/2/98-11/6/98; 10 hours Risk Management Credit.

4th AACFS scientific and clinical conference, Boston, MA 10/10/98 - 10/13/98; 21 hours Category I credit.

Pain Management in Oncology; P. LoRusso DO; ACPE 827-999-98-004-LO1; Medina Hospital; 7/23/98; 1 hour Category I credit.

Chronic Fatigue Syndrome Coordinating Committee Meetings, Department of Health and Human Services, Hubert H Humphrey Building, 4/28/98; 5 hours; no CME category assigned

Nuclear Magnetic Resonance Imaging; Lockport MR; Medina NY; 1 hour; no CME category assigned

Prevention of NSAID complications. J. Condemi, MD; Blue Cross Community Rounds, 3/19/98; 1 hour category I credit

Neonatal Advanced Life Support, American Academy of Pediatrics, Medina Hospital, Medina, NY; 3/12/98; 4

hours category I credits

The Clinical and Scientific Basis of Chronic Fatigue Syndrome; Sydney Australia; 2/10/98-2/14/98; 36 conference hours, Australian continuing medical education program.

## XVIII. Grants

Chronic Fatigue Syndrome Surveillance Program, physician review panel; five year extensiongrant from the Centers for Disease Control; Abt Associates, Cambridge, MA; 9/93 to 3/95.

"Family Care Program for HIV Infected Women and Children" Three year project funded by the Public Health Service ($404,146) 1/1990 to 1/94. Pediatric Consultant.

Chronic Fatigue Syndrome Surveillance Program, physician review panel; Abt Associates on contract from the Centers for Disease Control; 6/92 to 9/93.

"A Study of the Relationship between non-Hodgkin's Lymphoma and Chronic Fatigue Syndrome" One year project funded by the United Cancer Council 12/87. Co-Investigator .

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

KENNETH M. KANSKY

**DEFENDANTS**

COCA-COLA BOTTLING COMPANY OF NEW ENGLAND, INC., COCA-COLA ENTERPRISES, INC., COCA COLA ENTERPRISES LONG-TERM DISABILITY PLAN aka CORE LTD BENEFITS, and AETNA LIFE INSURANCE COMPANY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Norfolk
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Norfolk
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
BERNARD A. KANSKY, ESQ.
Kansky & Associates
468 Commercial Street #100
Boston, MA 02109-1020   (617/227-2020)

ATTORNEYS (IF KNOWN)

05 10908 DPW

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question ERISA (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7809 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

De novo and judicial review to ascertain entitlement to short and long-term disability benefits as well as reinstatement of insurance benefits plus legal fees, expenses and related relief.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ YES   ☐ NO

## VIII. RELATED CASE(S) (See instructions):   IF ANY

JUDGE   N/A

DOCKET NUMBER

DATE   5/2/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)** KENNETH M. KANSKY v. COCA-COLA BOTTLING COMPANY OF NEW ENGLAND, INC., et als

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

    ____    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    X    II.    195, 368, 400, 440, 441-444, 540, 550, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
    (791)      740, 790(791), 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

    ____    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
        315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
        380, 385, 450, 891.

    ____    IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
        690, 810, 861-865, 870, 871, 875, 900.

    ____    V.    150, 152, 153.

**05 10908 DPW**

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.**

    None

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**
           YES      NO XX

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)**
           YES      NO XX

    **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**
           YES      NO XX

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?**
           YES      NO XX

7. **DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).**
           YES      NO XX

    A.    **IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?**

         EASTERN DIVISION      CENTRAL DIVISION      WESTERN DIVISION

    B.    **IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?**

         EASTERN DIVISION      CENTRAL DIVISION      WESTERN DIVISION

**(PLEASE TYPE OR PRINT)**
**ATTORNEY'S NAME** BERNARD A. KANSKY, ESQ.
**ADDRESS** 468 Commercial Street #100, Boston, MA 02109-1020
**TELEPHONE NO.** (617) 227-2020

(Cover sheet local.wpd - 11/27/00)