UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **KENNETH M. KANSKY,**<br>　　　　　Plaintiff,<br><br>v.<br><br>**COCA-COLA BOTTLING COMPANY OF NEW ENGLAND,**<br>**COCA-COLA ENTERPRISES, INC.,**<br>**COCA-COLA ENTERPRISES LONG TERM DISABILITY PLAN**<br>**A/K/A CORE LTD BENEFITS,**<br>**AND**<br>**AETNA LIFE INSURANCE COMPANY,**<br>　　　　　Defendants. | **CIVIL ACTION NO.**<br><br>**05-10908 DPW** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT OF THE COURT DATED MAY 1, 2006 AND DOCKETED ON MAY 2, 2006**

_____

I.   **Introduction**

In his rule 59(e) motion, Plaintiff Kenneth M. Kansky ("Kansky") asserts error in this Court's order allowing the defendants' motion for summary judgment and denying Kansky's cross-motion for summary judgment. Kansky's motion should be denied. Much of his argument is based either upon a misinterpretation of this Court's ruling or is devoted to issues previously considered by this Court without identifying any particular error of law. In the end, Kansky has failed to identify anything that would be a basis for reconsideration under rule 59(e). Therefore, his motion should be denied.

II.  **Kansky's Motion Must Be Denied Given the Applicable Standards for Reconsideration**

Generally speaking, in the First Circuit, in order to prevail on a rule 59(e) motion, the moving party must either clearly establish a manifest error of law or must present newly discovered evidence. Marie v. Allied Home Mortgage Corp., 402 F.3d 1 n.2 (1st Cir. 2005)("We

note that it is very difficult to prevail on a rule 59(e) motion")(citing Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004)).  A rule 59(e) motion cannot be used to raise new arguments or to advance a new theory.  F.D.I.C. v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992).  On appeal, the decision of a district court to grant or deny a rule 59(e) motion for reconsideration is itself reviewed under an abuse of discretion standard.  Emmanuel v. Intern. Broth. of Teamsters, 426 F.3d 416, 422 (1st Cir. 2005).[1]

In the context of an ERISA case, since this Court's initial review of the administrator's decision is limited to what was contained in the administrative record, a rule 59(e) motion cannot be used to introduce new evidence.  Accordingly, for purposes of this motion, the relevant standard is whether Kansky has identified a manifest error of law in this Court's ruling on the cross-motions for summary judgment.  He has not.  Rather, much of his brief simply reargues matters that were previously reviewed and considered by this Court, and this alone does not provide sufficient basis for amending the judgment.  The plaintiff's motion should be denied.

**III.   Kansky's Specific Arguments Have No Merit**

    **A.   Kansky's complaint that Aetna did not reach conclusions as to the interaction of the plaintiff's pre-existing condition and his alleged CFS is irrelevant.**

In his first substantive argument at part 3 of his motion, Kansky appears to argue that this Court has incorrectly concluded that a pre-existing condition, i.e. Kansky's well documented history of schizoaffective disorder, contributed to Kansky's claim of total disability, which he claims was instead caused by Chronic Fatigue Immune Dysfunction Syndrome ("CFS").  His primary complaint seems to be that Aetna, as claim administrator, did not consider the extent to which the pre-existing condition of schizoaffective disorder impacted his claimed diagnosis of CFS.  If this is his complaint, Kansky misconstrues this Court's ruling as well as the requirements of the Plan.  The issue presented by the pre-existing condition provision in the

---

[1] A rule 59(e) motion may also be used to assert an intervening change in controlling law.  Marie v. Allied Home Mortgage Corp., 402 F.3d 1 n.2 (1st Cir. 2005)(citing 11 C. Wright et al., Federal Practice & Procedure § 2810.1 (2d ed. 1995)).  However, Kansky does not suggest that the controlling law has changed.

Plan, and which this Court ruled on, was solely whether the pre-existing condition of schizoaffective disorder caused or contributed to his failure to return to work. The application of the pre-existing condition provision does not require a finding of how that condition interacted with any other alleged diagnosis, such as CFS.

The plain language of the pre-existing condition exclusion precludes long-term disability ("LTD") benefits if a pre-existing condition either caused or contributed to the disability complained of by a claimant. Accordingly, the exclusion will apply whether an asserted disability is solely caused by a pre-existing condition (i.e. a 100% cause), or at the other extreme, when an asserted disability was contributed to by a pre-existing condition (i.e. theoretically, for there is no evidence Aetna applied this extreme approach, a mere 1% contributor), or anything in between. For purposes of determining whether the exclusion applies, it is immaterial whether a pre-existing condition is the sole cause of disability or a mere contributing cause along with something else. Thus, the question of whether Aetna correctly denied Kansky's LTD benefit claim based upon the pre-existing condition exclusion boils down to whether his pre-existing condition, namely schizoaffective disorder, caused or contributed to his disability, without regard to the relationship of that pre-existing condition to his alleged additional diagnosis of CFS.

This is exactly the analysis undertaken by Aetna when it denied Kansky's claim for benefits. In its letters to Kansky setting forth its decisions on Kansky's initial request for benefits and on his appeals Aetna, informed Kansky that the pre-existing condition provision in the Plan precluded coverage of his claim because the medical evidence and pharmacy records demonstrated that his pre-existing condition of schizoaffective disorder played a role in his inability to work. For instance, when Aetna initially denied the claim on April 26, 2004, Aetna explained that "[u]nder the terms of his disability plan, no benefits can be paid for a total disability period arising from a pre-existing condition [and] we are denying his claim for disability

3

benefits because our review shows that his disability arises from a pre-existing condition." **AR000482-AR000485.**

Subsequently, on July 30, 2004, in response to an appeal of the denial of his claim for benefits, Aetna advised the plaintiff that the defendants "were upholding the denial of Mr. Kansky's LTD benefits." **AR000237**. In that letter, Aetna thoroughly reviewed the extensive medical and pharmacy records establishing that the plaintiff received both treatment and medication for schizoaffective disorder during the pre-existing condition period under the Plan, and advised Kansky that "based on the above facts, we find that the condition for which Mr. Kansky is seeking long-term disability benefits, schizoaffective disorder with symptoms of depression, *was caused or contributed to* by conditions for which he received treatment or drugs during the pre-existing condition exclusionary period." **AR000238** (italics added). On November 9, 2004, in response to yet another appeal by the plaintiff, Aetna informed Kansky of its final determination on the plaintiff's request for LTD benefits. In that letter, Aetna quoted the exact terms of the pre-existing condition provision in the Plan, noting that it states that "long-term disability coverage does not cover any disability that . . . is *caused or contributed to* by a pre-existing condition." **AR000230** (italics added). The letter then reviewed the extensive medical evidence establishing that Kansky's schizoaffective disorder was a pre-existing condition for which he had received treatment and medication during the exclusionary period for purposes of the Plan's terms. **AR000230-AR000233**.

As these documents reflect, Kansky's request for LTD benefits was denied because the medical evidence and pharmacy records in the Administrative Record established that the pre-existing condition provision in the Plan applied. In denying the claim for benefits, including on appeal, Aetna did not linger on the interplay of Kansky's admittedly pre-existing condition of schizoaffective disorder and his claim that he also suffered from CFS, because there was simply no reason to do so. As this Court correctly found, the extensive medical evidence and prescription drug records in the Administrative Record established the existence of each of the

4

elements required under the Plan's express terms for the pre-existing condition provision to apply, namely, that the disability began during the first twelve months of the employee's coverage under the Plan and was caused or contributed to by an illness for which the employee received treatment or prescription drugs during the three months before he became covered under the Plan. These elements are all that was required under the Plan for the pre-existing condition provision to apply, and this Court rightly found that the Administrative Record established the existence of each of these elements.

The Plan did not impose any obligation on any party, including the defendants and this Court, to either consider the extent to which CFS allegedly also played a role or to draw a distinction between the extent to which Kansky's disability was caused by his schizoaffective disorder or instead by his alleged additional diagnosis of CFS. Rather, all that was required under the express terms of the Plan was medical evidence establishing that schizoaffective disorder -- which Kansky does not deny was a pre-existing condition from which he suffered -- caused or contributed to his inability to work. Aetna made these findings in its handling of the plaintiff's claim for benefits, and this was all that it was required to find under the Plan's terms. This Court likewise found that these requirements of the pre-existing condition provision were met, and this is all that the Court was required to do to decide this case. Accordingly, the plaintiff's complaints in paragraph 3 of his motion do not withstand scrutiny.

    **B.    Kansky's complaint about the Court's reference to the plaintiff only claiming to be disabled is likewise irrelevant.**

In paragraph 4 of the motion, Kansky complains that this Court on page two of its memorandum and opinion notes that the plaintiff "claimed" to have become disabled on July 7, 2003. Kansky seems to complain that the Court should have instead found that he was disabled and that the only dispute was over whether coverage for that disability was precluded by the pre-existing condition provision in the Plan. The simple fact of the matter is that this point is irrelevant. Regardless of whether Kansky only claimed to be disabled, or was instead actually

disabled, there was no coverage because his claim for disability was premised on a pre-existing condition.

### C. Kansky's criticisms of this Court's analysis of the evidence are simply a restatement of previously stated arguments that have been considered and rejected by this Court.

As noted previously, a motion under Rule 59(e) that does nothing more than restate arguments previously considered by the court does not provide an adequate basis for reconsideration. Paragraphs 5 and 6 of Kansky's motion essentially reargue the weight and inferences to be drawn from certain aspects of the Administrative Record, matters that were discussed in great detail during the briefing on the parties' cross-motions for summary judgment. As discussed in the summary judgment memoranda submitted by the defendants, the Administrative Record contains extensive evidence that goes beyond the medical evidence complained of by Kansky in parts 5 and 6 of his rule 59 motion, the entirety of which supports the conclusion that Kansky's inability to work was caused or contributed to by his pre-existing condition of schizoaffective disorder. His complaints about the weight that should have been given to the particular pieces of evidence that he references in these paragraphs are thus irrelevant.

Moreover, Kansky's reargument concerning the interpretations to be given to certain pieces of medical evidence is of no matter because, as is discussed extensively in the defendants' memorandum in support of their motion for summary judgment, as long as there is reasonable support in the medical evidence contained in the Administrative Record for the administrator's conclusion, a reviewing district court cannot overturn the administrator's decision on the basis of its own independent weighing of the various pieces of medical evidence submitted to the administrator during its handling of the claim. As this Court recognized in its memorandum and order at page 38, it is the law in this circuit that it is the administrator's – and not the court's -- responsibility to weigh and differentiate the medical evidence and to reach a conclusion on whether it supports the claim for benefits. See, e.g., Wright v. R.R. Donnelley &

6

Sons Co. Group Benefits Plan, 402 F.3d 67 (1st Cir. 2005); Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27 (1st Cir. 2001); Denmark v. Liberty Life Assurance Co., 2005 WL 3008684 (D. Mass. Nov. 10, 2005); Ayer v. Liberty Life Assurance Co., 382 F. Supp. 2d 162 (D. Me. 2005); Martin v. Polaroid Corp. Long Term Disability Plan, 2005 WL 2474472 (D. Mass. 2005); Kennard v. Unum Life Ins. Co., 211 F. Supp. 2d 206 (D. Me. 2002). Although Kansky may want this Court to reweigh the medical evidence at this time, this Court cannot do so.

Kansky continues on this same wrong path in Part 7 of his rule 59 motion, which also consists of further reargument without any clear assertion of error by this Court. Kansky in essence asserts in this part of his motion that the facts show that he was disabled by CFS and not schizoaffective disorder based on a comparison of the symptoms of the two conditions. What Kansky fails to acknowledge, however, is that this Court was presented with substantial evidence in the Administrative Record establishing that schizoaffective disorder caused or contributed to Kansky's inability to work. This Court's memorandum discusses significant amounts of evidence to this effect in its opinion, and as noted previously, it was for the administrator to determine whether schizoaffective disorder played a role in Kansky's inability to work. This Court has already correctly rejected Kansky's assertions that the medical evidence does not support Aetna's finding that Kansky's pre-existing schizoaffective disorder either caused or contributed to his inability to work. Kansky has essentially restated the same argument he made on the cross-motions for summary judgment, and there is nothing new offered by Kansky in this part of his motion that should change this Court's conclusion.

In part 8 of his motion, Kansky again repeats his complaints about this Court's reliance on certain medical records and opinions that supported the administrator's conclusion that schizoaffective disorder caused or contributed to Kansky's inability to work. Once again, the briefs filed by the defendants discuss - and this Court's opinion is consistent with - the clear rule in this Circuit, that it is the administrator's responsibility to weigh and distinguish among the various pieces of medical evidence in deciding the plaintiff's claim for benefits. Kansky cannot

properly ask this Court to replace Aetna's weighing of that evidence with a different calculus. The law in this circuit is clear: Aetna's final determination must be upheld so long as it was reasonable and supported by substantial evidence. This Court's detailed review of the medical evidence in the Administrative Record confirmed that Aetna's determination was indeed supported by substantial evidence. As a result, Aetna's decision must be upheld, as this Court found. Kansky's critique of some of the medical evidence does not alter this fact.

### D. This Court correctly determined that Aetna gave appropriate weight to the competing medical opinions, including those of Dr. Bell.

Part 8 of Kansky's motion also repeats his complaints that it was inappropriate for this Court to credit, or for Aetna to credit, medical evidence other than the opinion of the plaintiff's own chosen expert, Dr. Bell. As discussed in detail both above and in previous filings in this case, and as this Court recognized in its opinion and memorandum, it is the administrator's responsibility, and not this Court's responsibility, to weigh and differentiate among the conflicting medical evidence.

Nevertheless, as he has throughout this case, Kansky insists yet again that the defendants and this Court should simply defer to the opinions of Dr. Bell. But it is established that, "where medical opinions differ, the administrator is not required to defer" to that put forward by the claimant and may instead properly accept a competing opinion. Martin at *7. Dr. Bell, it is important to remember, never rendered an opinion at all until after the initial decision was made to deny benefits to the plaintiff; courts in this circuit recognize that it is appropriate to discount a report from the plaintiff's own hand-selected physician that seeks to bolster a claim for benefits when it is not rendered until after the decision to deny benefits has been communicated to the claimant, on the entirely reasonable assumption that the reports have been influenced by the physician's natural desire to aid the plaintiff's claim for benefits. See, e.g., Brigham v. Sun Life of Canada, 183 F. Supp. 2d. 427, 436 (D. Mass. 2002)("it was

reasonable for Sun Life to consider the possibility that notification to Brigham of the impending end of the sixty-month period may have influenced the opinions on Dr. French's form").

In addition, with regard to Dr. Bell, the plaintiff also complains that Aetna's medical reviewers did not contact Dr. Bell and confer with him.  Kansky cites no case law for the proposition that Aetna was obligated to reach out to Dr. Bell and develop evidence that would support Kansky's claim for benefits.  In fact, it is generally recognized that although a claim administrator may not totally ignore readily available information concerning a claimant's condition, Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 807 (10th Cir. 2004), it is not obligated to "generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant," Vega v. National Life Ins. Serv., 188 F.3d 287, 299 (5th Cir. 1999); see also Sandoval v. Aetna Life Ins. Co., 967 F.2d 377, 380 (10th Cir. 1992) (noting that administrators are obligated only to consider evidence before them and are "under no duty to seek out evidence contradicting evidence before them")(citing LeFebre v. Westinghouse Electric Corp., 747 F.2d 197, 208 (4th Cir. 1984)); Das v. UNUM Life Ins. Co. of America, 2005 U.S. Dist. LEXIS 5461, *28 (E. D. Pa. March 31, 2005)("ERISA plan administrators do not have an independent duty to develop the record").

Compounding this flaw in the plaintiff's argument is the fact that, as this Court is well aware, Kansky sued the defendants for communicating with one of his treating physicians while his claim for benefits was being processed, and he continues to claim in this case that it was somehow prejudicial error for Aetna to have done so.  Kansky now appears to be taking a position that cannot be reconciled with his prior complaints: He now complains that the defendants erred when they did not contact and discuss his treatment with Dr. Bell, the one physician that the plaintiff would like Aetna to have communicated with.

In the end, Aetna was under no obligation to contact Dr. Bell directly; his written opinions are a part of the Administrative Record and they were clearly given their due weight in

assessing the nature of Kansky's disability. With regard to this issue, as well, Kansky has failed to identify any basis sufficient to warrant reconsideration.

### E. This Court properly applied the deferential arbitrary and capricious standard of review.

In Part 9 of his motion, Kansky essentially argues that a *de novo* standard of review should have been used in reviewing Aetna's decision. However, as Kansky correctly acknowledges, Wright v. R.R. Donnelly & Sons Co. Group Benefits Plan, 402 F.3d 67, 75 (1st Cir. 2005), is the controlling precedent in this circuit. Accordingly, with that precedent well established, there is no doubt whatsoever that this Court applied the correct standard of review in this case under the law of this circuit.

### F. This Court's review of the medical evidence before it was entirely proper and thorough.

In paragraph 10, Kansky appears to focus on, and to some extent confuse, two different complaints. First, he seems to complain that the claim administrator relied on numerous well-credentialed medical experts to reach its determination, and did not simply accept the position of the plaintiff's chosen expert, Dr. Bell.[2] As discussed above, as well as in previous memoranda filed by the defendants relating to the summary judgment motions and in this court's own memorandum and opinion, Aetna, as the claim administrator, was absolutely within its rights and within its legal authority when it decided which medical experts to rely upon and which to reject.

The sole case cited by Kansky in support of his argument on this point is Ruiz v. Apfel, 98 F. Supp. 2d 200 (D. Conn. 1999), a case involving a disability claim under the Social Security Act. Apart from the fact that this case was decided under the requirements of the Social Security Administration and therefore has little or no relevance in an ERISA context (see Black & Decker v. Nord, 123 S. Ct. 1965, 1969-72 (2003)(explaining the differences between Social

---

[2] In addition, in paragraph 10 the plaintiff again complains that Aetna did not "confer" with Dr. Bell. As discussed above with regard to this same complaint made by Kansky in paragraph 8 of his rule 59 motion, this complaint is inconsistent both with applicable case law and with Kansky's own previous criticism of the defendants for communicating with a different one of his treating physicians.

10

Security disability benefits and benefits under ERISA plans, noting how ERISA claim administrators are not obligated to follow the same analysis as used by the Social Security Administration), Ruiz is clearly distinguishable on its facts, as the administrative law judge in Ruiz essentially rejected the conclusions of a treating physician despite the absence of any substantial countervailing evidence. The present case, on the other hand, reveals an Administrative Record that contained numerous medical opinions and other medical evidence that contradicted the rejected opinion of Dr. Bell.

Second, Kansky complains that this Court referenced medical research in its memorandum and opinion, and claims that this Court was performing its own medical evaluation. Apparently, Kansky believes that this Court's memorandum and opinion was based on its own independent medical conclusions. Any honest reading of the memorandum and opinion establishes that this is simply untrue. The Court relied upon and reviewed the medical evidence considered by the administrator and contained in the Administrative Record. This was entirely appropriate and the plaintiff's complaints take the court's references to medical evidence out of context.

To the extent that Kansky is arguing that this Court improperly referred to a 1994 Annals of Internal Medicine article to assist it in its review of the Administrative Record, this, too, was entirely proper. To begin, it must be noted that the article at issue sets forth the most current CFS research case definition, according to the Centers for Disease Control. More importantly, the article is the basis for comments in the Administrative Record by Drs. Bell, Burton and Defoy. To place those comments in context, it was appropriate for this Court to consider the article itself. See, e.g., Vega v. National Life Ins. Servs., Inc., 188 F.3d 287, 299 (5th Cir. 1999)(in an ERISA case, evidence outside the administrative record that assists the district court in understanding the medical terminology or practice related to a claim is permitted; however, a district court is precluded from receiving evidence to resolve disputed material facts); see also Horton v. Prudential Ins. Co. of Am., 51 Fed. Appx. 928 (5th Cir. 2002)(same).

11

In the end, this Court based its decision on the Administrative Record, and the plaintiff's real complaint is that the Administrative Record does not support the outcome he prefers; this Court's reference to a medical article on the relevant subject does not change this fact.[3]

### G. This Court's refusal to consider evidence concerning UNUM Provident was a proper exclusion of immaterial and irrelevant evidence.

Finally, in Part 11 of his motion, Kansky engages in the strange tactic of complaining about a company that is not even a party to this litigation (and which played no role in this matter and has no relationship to any of the defendants in this case), UNUM. Whatever the case may be with regard to the complaints about UNUM that the plaintiff references (without foundation) in his rule 59(e) motion, there is no showing that it has any relevance to the present matter or even involves events factually similar to the present matter.

Kansky claims only that UNUM's practices somehow bear on the fact that the plaintiff "was never once personally examined by an IME from Aetna or the Coca-Cola ERISA plan." He fails, however, to cite any case law indicating that Aetna or any other defendant had an obligation to arrange an IME for him. Moreover, as discussed above, it is clear that there is no obligation on the part of a claim administrator to create evidence for the plaintiff. E.g., Vega; Sandoval and Das cited previously; see also Short v. UNUM Life Ins. Co. of America, 2003 WL 22937720 (D. Conn. Dec. 3, 2003)(insurer not required to perform independent medical examination on claimant and could properly rely on the opinions of a physician who reviewed claimant's medical records). Rather, it is only the obligation of the claim administrator to review the existing medical evidence to reach a determination that has substantial support in that evidence. As this Court found and made abundantly clear in its extensive review of the medical evidence, the administrator did exactly that in this case.

---

[3] On May 19th, the plaintiff filed a supplement to his rule 59(e) motion, which does little except submit to the Court a letter from his preferred expert, Dr. Bell, complaining about an Annals of Internal Medicine article. Obviously, the Court cannot base a decision on Kansky's claim for benefits under any circumstances on this material because it was not part of the Administrative Record, and this supplemental submission should be ignored for this reason alone. Beyond that fact, the submission does not challenge or alter the fact that the Court's actual basis for its decision in favor of the defendants was the medical evidence in the Administrative Record, rendering irrelevant the plaintiff's trumped up complaints about the Court's discussion of an Annals of Internal Medicine article.

## IV.  Conclusion

In summary, Kansky's motion has not identified anything that could even remotely be classified as a "manifest error of law" that would justify allowing the pending rule 59(e) motion. This Court applied the proper evidentiary standard of review and reached the correct decision, namely that the pre-existing condition exclusion precluded coverage under the Plan of Kansky's claim for LTD benefits. Accordingly, the plaintiff's rule 59(e) motion should be denied.

Respectfully submitted,
The Defendants, by their attorneys

/s/ Stephen D. Rosenberg
Stephen D. Rosenberg    [BBO #558415]
Eric L. Brodie   [BBO #639833]
THE MCCORMACK FIRM, LLC
One International Place
Boston, MA    02110
**Ph:**    617•951•2929
**Fax:**   617•951•2672

84958.5